**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

OHIO RIVER VALLEY
ENVIRONMENTAL COALITION, INC. et al.,

        Plaintiffs,

v.                                                                        CIVIL ACTION NO. 3:00-0058

GREEN VALLEY COAL COMPANY, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

On December 19, 2007, the Fourth Circuit Court of Appeals issued a decision in which it affirmed, in part, vacated, in part, and remanded this Court's prior decision regarding attorneys' fees in this case. *Ohio River Valley Envtl. Coal., Inc. v. Green Valley Coal Co.*, 511 F.3d 407 (2007). Specifically, the Fourth Circuit "vacate[d] the fee award with respect to the supplemental claims phase (phase two) because that award includes fees for OVEC's efforts in the administrative arena, and fees for these efforts are not recoverable under [30 U.S.C.] § 1270(d)." 511 F.3d at 410. On remand, the Fourth Circuit stated that this Court may reconsider whether a fee award for phase two of the litigation is appropriate. *Id*. In that regard, Plaintiffs have filed a Motion for an Order Determining the Amount Due by Virtue of Partial Affirmance and Requiring Immediate Payment of that Amount by Defendant or its Surety [Doc. No. 392] and a Motion to Resume Consideration of their Prior Motion for an Order Determining the Amount Due by Virtue of Partial Affirmance and Requiring Immediate Payment of that Amount by Defendant or its Surety. [Doc. No. 400]. For the reasons that follow, the Court **GRANTS, in part,** and **DENIES, in part**, Plaintiffs' request for payment.

Plaintiffs' request for payment can be divided into three general categories. First, the parties dispute whether Plaintiffs should collect a fee award for their efforts during phase two of this litigation. Phase two began in October of 2002 when Plaintiffs filed supplemental claims against Green Valley Coal Company (Green Valley) asserting violations under the Surface Mining Control and Reclamation Act (SMCRA), 30 U.S.C. § 1201 *et seq.*, at its Hominy Creek operations.[1] Before phase two began, the West Virginia Department of Environmental Protection (WVDEP) issued a Notice of Violation (NOV) to Green Valley for three iron-laden water seeps that were flowing into Hominy Creek without first passing through sediment ponds. By Order dated October 18, 2002, the West Virginia Surface Mine Board found no remedial action by Green Valley was required and the NOV was abated. At the prompting of Plaintiffs, the Office of Surface Mining (OSM) issued a second NOV for the same seeps on June 20, 2003.

According to Thomas Cook, Green Valley's Rule 30(b)(6) designee, Green Valley began working on an existing sediment control pond within two weeks of the second NOV being issued to determine the source of the iron seeps. Green Valley states that it believed the seeps were flowing through an "underdrain" installed through a refuse pile by a previous owner. The pond was excavated, the drain was found, and the pond was sealed. Thereafter, OSM inspected the site, apparently found the remedial work successful, and terminated the NOV in late September of 2003.

In the current motions, Plaintiffs assert that some of the work performed on the pond was done in response to phase two of this litigation rather than the NOV. As part of their

---

[1] Plaintiffs' filed a motion to amend their pleadings on October 21, 2002. The Court granted the motion on December 12, 2002.

supplemental claims in phase two, Plaintiffs challenged all of Green Valley's alleged unlawful discharges, not just those that were the subject of the NOV. Specifically, Plaintiffs contend that Green Valley dug the pond much deeper and wider than was necessary to eliminate the iron seeps in the NOV. Plaintiffs also note that Green Valley installed a floating pump to keep the water level down to the level of Hominy Creek. Plaintiff contends that these measures by Green Valley demonstrate that it was attempting to address all of the issues raised by Plaintiffs and not just the three seeps in the NOV.

In response, Green Valley asserts that the reason why the pond was dug deeper than the underdrain is because it was unclear where the underdrain was located. At a deposition, Mr. Cook stated that they excavated the bottom of the pond in an attempt to find the underdrain. *Deposition of Thomas Cook*, at 79. Ultimately, the underdrain was found along the side. *Id.* at 81. Mr. Cook stated that after the underdrain was found:

> I don't know that they dug any deeper than they already had been. I think they were just removing material. They had a hole dug that was deep in the bottom of the pond and then they continued to remove material from around that and generally take out material from the pond and then replace it with dirt to seal the bottom of the pond.

*Id*. at 80. Later in the deposition, Mr. Cook explained that the pond was excavated wider because they had to remove the mud and other soft material from the bottom of the pond so they could "bring dirt back in and seal the bank and bottom of the pond." *Id*. at 85. He further stated:

> If we had left that more or less a vertical hole through the mud material in the bottom of the pond, the sides would have sloughed off and essentially

> filled in the pond, so that it would have been a pumping problem.
>
> Additionally, when we brought dirt in to seal the bottom, that mud in the bottom of the pond would have squeezed out and interfered with the pumping, so it was more of an operational issue to preserve the ability to pump so that we didn't get mud sloughing off the sides.

*Id*. at 85-86.  In addition, Green Valley submitted an affidavit by Danny Cox who serves as the Vice President of Environmental Affairs for Massey Coal Services, which provides environmental and administrative support to coal mining subsidiaries of Massey Energy Company, including Green Valley.  According to Mr. Cox, "Green Valley undertook remediation of the seeps cited in OSM's NOV solely because of the federal NOV.  No claim or threatened claim brought against Green Valley in this lawsuit played any role in the remediation efforts of Green Valley." *Affidavit of Danny Cox*, at ¶ 7.

Plaintiffs reply that photographic evidence of the site refutes Green Valley's rendition of events.  Plaintiffs insist that photographs purportedly taken on August 13, 2003, establish that excavation continued after the underdrain was located on August 5, 2003.  Plaintiffs argue that the only reasonable explanation for the continued excavation was to address the "subsurface flow" issue raised in their supplemental claims.  In its Sur-reply, Green Valley contends that the photographs were not taken on August 13, but rather that date was when that the photos were sent to its expert in another case.  Although Green Valley concedes that it does not know the exact date the photos were taken, it asserts they were taken before August 5 and they document its unsuccessful efforts

to find the underdrain and confirms its account of events.[2]  In their Sur-reply, Plaintiffs challenge Green Valley's assertion and point to several areas in the photos which they contend establish that the photos at issue were taken after August 5.

The Court has carefully examined the pictures and finds that it is difficult to discern the sequencing of the photographs.  However, even if the Court were to agree with Plaintiffs as to the sequence, the Court finds that Plaintiffs nevertheless have failed to establish their entitlement to attorneys' fees for phase two.  In order for the Court to award fees for phase two of the litigation, Plaintiffs must establish that the "phase two litigation was a significant or substantial cause of Green Valley's decision to undertake remedial efforts." 511 F.3d at 419 (citation omitted).

Here, Green Valley claims its work on the pond was solely in response to the second NOV.  Clearly, the timing of the events supports Green Valley's assertion.  Although phase two of this litigation was filed in October of 2002 very little discovery was conducted on this phase of the litigation and no work was done on the pond until *after* the second NOV was issued in June of 2003.[3]  Within two weeks of that NOV being issued, Green Valley began its work on the pond. Green Valley maintains that it initially dug out the bottom of the pond in order to find the underdrain.  Although Plaintiffs insist that Green Valley continued to work on the pond to a degree

---

[2] In its Surreply, Green Valley asserts it relied upon an old drawing which suggested the underdrain might be located at the bottom of the pond.  As neither Plaintiffs nor the Court were provided a copy of this drawing, the Court places no weight on this assertion.

[3] Plaintiffs had served interrogatories and requests for production of documents.  Plaintiffs also state that they took the deposition of Charles Grafton on September 3, 2003, prior to Green Valley's implementation of its permanent pumping system and the termination of the NOV.

much greater than was necessary to abate the NOV, Green Valley states that the work was necessary to complete the abatement. Specifically, Green Valley asserts it had to remove mud and widen the pond so the pond could be properly sealed and the water pumping mechanisms could work. In addition, Green Valley insists that it had to lower the water level to prevent the iron seeps cited in the NOV.

Although there may have been, as Plaintiffs suggest, an incentive for Green Valley to continue working on the pond and do some of the work on the pond because of phase two of this litigation, the Court finds that Plaintiffs have failed to show that phase two of this litigation was a *significant or substantial* factor in Green Valley undertaking the work. As Plaintiffs have failed to make the necessary showing, the Court **DENIES** Plaintiffs request for attorneys' fees for its work on phase two.

Second, Plaintiffs request that they be awarded the entire amount of the "Fees on Fees" previously awarded by this Court in its Memorandum Opinion and Order Regarding Attorneys Fees and Costs entered on January 25, 2006.[4] Plaintiffs argue that Green Valley is not entitled to a partial reduction of this award because it waived its right to make such a demand by not arguing for a "partial success" reduction on the "Fees on Fees" element before the Fourth Circuit. On the other hand, Green Valley argues that, because the Fourth Circuit reversed and remanded the fee award on phase two, it follows that the "Fees on Fees" award was overturned and Plaintiffs' demand should be reduced by one-half. Upon review, the Court agrees with Plaintiffs. Although Green

---

[4]The "Fees on Fees award was designated as Category 5 in the Memorandum Opinion and Order.

Valley could have argued for a "partial success" reduction with the Fourth Circuit, its failure to do so left standing that portion of the award. At the very least, Green Valley could have requested a "partial success" reduction in its petition for rehearing before the Fourth Circuit. Having not specifically challenged that award on appeal or on rehearing after it clearly knew the Fourth Circuit's ruling on phase two, this Court will not revisit the issue now on remand. *See South Atl. Ltd. P'ship of Tennessee v. Riese*, 356 F.3d 576, 584 (4th Cir. 2004) (holding "that the mandate rule forecloses litigation on issues decided by the district court but foregone on appeal or otherwise waived . . . ." (internal quotation marks and citations omitted)). Therefore, the Court finds that Plaintiffs are entitled to the full amount of the "Fees on Fees" award and **GRANT** that portion of their motion.

Third, Plaintiffs state that they made an error in determining the amount immediately due following the Fourth Circuit's decision affirming a portion of this Court's judgment. Plaintiffs initially requested that Green Valley pay a total of $118,151.45 for the amount attributable to phase one of the litigation, one-half of the fee on fee award, and for expenses. However, Plaintiffs now assert that the actual amount due was $120,924.27. Plaintiffs explain that the difference in the amount requested and the amount actually due is attributable to additional post-judgment interest and a miscalculation of Green Valley's position by Plaintiffs' counsel. Green Valley asserts, in part, that they paid the amount demanded and they should not have to pay an additional amount, but Green Valley agrees that amount actually due will change if this Court determines that Plaintiffs are entitled to more than one-half of the "Fees on Fees." As the Court has decided that Plaintiffs are entitled to the entire amount of their requested "Fees on Fees" but are not entitled to fees related to

phase two of the litigation, the Court finds that any miscalculation by Plaintiffs' counsel can be corrected in light of today's decision.  To the extent Green Valley argues that it should not have to pay any additional sum because they paid the amount demanded as a full settlement of that portion of the amount due, the Court finds that Plaintiffs' counsel alerted defense counsel of the changed demand before the lesser amount was paid and the additional amount clearly remained in dispute at the time of the payment.  Therefore, the Court **GRANTS** Plaintiffs' motion with respect to this sum and **DIRECTS** counsel to recalculate the amount due in light of this decision.

Accordingly, for the foregoing reasons, the Court **DENIES** Plaintiffs' request to be awarded fees on phase two of the litigation, but **GRANTS** their request to receive the full amount of the "Fees on Fees" award.  The Court further **GRANTS** Plaintiffs' motion with respect to the alleged error in calculating the amount that was "immediately due" following the Fourth Circuit's mandate and **DIRECTS** the parties to recalculate that amount in light of today's decision.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:	September 25, 2008

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE